This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division. On December 22, 1997, the juvenile court awarded permanent custody of Justin, Julie and Jordan V. to the Lucas County Children Services. Appellant, the natural mother[1] of these three children and their older sister, Jessica V., appeals that judgment and sets forth the following assignments of error:
 "THE TRIAL COURT'S DECISION THAT PURSUANT TO OHIO REVISED CODE SECTION 2151.414(E)(1) AND (4) THAT THE CHILDREN CAN NOT [sic] BE PLACED WITH THE APPELLANT WITHIN A REASONABLE PERIOD OF TIME WITHOUT STATING ON THE RECORD THOSE FINDINGS OF FACT THAT SUPPORT ITS DECISION WAS A DENIAL OF APPELLANTS [sic] DUE PROCESS RIGHTS."
 "THE TRIAL COURT'S DECISION THAT PURSUANT TO 2151.414(E)(1) AND (4) [sic] THAT THE CHILDREN CAN NOT [sic] AND SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 "THE TRIAL COURTS [sic] FINDINGS THAT THE AGENCY HAD MADE REASONABLE EFFORTS TO PREVENT THE CONTINUOUS REMOVAL OF THE CHILDREN DESPITE AGENCIES LACK OF GOOD FAITH EFFORT TO IMPLEMENT A REUNIFICATION PLAN CONSTITUTED A DENIAL OF APPELLANTS [sic] DUE PROCESS RIGHTS."
Beginning in 1994, Lucas County Children Services ("LCCS") was involved with and offered services to appellant's family. LCCS first sought temporary custody of appellant's five minor children in December 1995 and, by amended complaint, in January 1996. According to the complaint, the conditions in appellant's home were filthy and unsanitary, the youngest child, Jordan, born in May 1995, was suffering from a failure to thrive, and appellant allowed a convicted child sex offender to live in her home. In fact, on a day the family's caseworker visited appellant's residence, appellant's oldest son, Joshua, was in a locked bedroom with the sex offender.
On June 20, 1996, Joshua (born January 19, 1981), Jessica (born August 17, 1984), Justin (born January 23, 1991), Julie (born August 25, 1992) and Jordan (born May 16, 1995)[2] were adjudicated dependent and neglected. Temporary custody of these children was awarded to LCCS. In December 1996, LCCS agreed to terminate its temporary custody of Joshua and return him to the legal custody of his mother with protective supervision by the agency.
On January 17, 1997, appellee filed a motion for permanent custody of Jessica, Justin, Julie and Jordan asserting that they could not be placed with either parent within a reasonable time or should not be placed with either parent.
The court then proceeded with a hearing on all matters before it.
In its final judgment, the juvenile court first took judicial notice of the adjudicative facts in this case and considered those facts plus the evidence offered on the motion for permanent custody in reaching its decision. The court found that Justin, Julie and Jordan could not be placed with either parent within a reasonable time or should not be placed with either parent. The court based this finding on R.C.2151.414(E)(1) and (4), stating that:
 "[T]he conditions that caused the initial removal of the children from their home have not been remedied, and the children cannot be returned home. The Court finds the insufficient parenting skills which caused the removal of the children from the home have not been remedied. The Court finds that although case plan services have been offered to the mother for an extended period of time, and the mother has participated in these services, her integration of the material has not been such that she would be able to provide the supervision and consistent care that the children require. The Court finds the risk for neglect in the home remains high."
The court also held that it would be in the best interest of these children if permanent custody was awarded to LCCS.
With regard to Jessica, the court determined that, due to her age, it would not be in her best interest to award permanent custody to LCCS. The court continued appellee's temporary custody of this child.
The court also found that LCCS made reasonable efforts to prevent the continued removal of the children from appellant's home. The court held:
 "Said efforts included case plan management performed by the caseworker, psychological counseling and parenting classes for the mother. Further, counseling services and other therapeutic services have been offered to the children to address their special needs. In addition, the children have been placed in therapeutic foster homes to address their special needs. Further, although LCCS was available for the fathers to seek, and participate, in case plan services, the fathers failed to participate in any services."
In her first assignment of error, appellant contends that the juvenile court erred in failing to issue proper findings of fact and conclusions of law in support of its decision granting permanent custody of Justin, Julie and Jordan to LCCS. R.C.2151.414(C) provides, in part, that "if the court grants permanent custody of a child to a movant * * * the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."
In this case, appellant's trial counsel requested a "written opinion." The record indicates that the juvenile court adequately and succinctly summarized its decision and the basis for that decision in its December 22, 1997 judgment entry. Thus, we find no error by the juvenile court in not issuing additional findings of fact and conclusions of law. We further find that appellant was not prejudiced because the judgment entry is sufficient to show that the juvenile court considered the relevant standards and evidence in reaching its decision. Cf. In re Brown (1994), 98 Ohio App.3d 337. Accordingly, appellant's first assignment of error is found not well-taken.
In her second assignment of error, appellant asserts the trial court's judgment as to the existence of the conditions set forth in R.C. 2151.414(E)(1) and (4) is not supported by clear and convincing evidence.
R.C. 2151.413(A), effective September 18, 1996, allows a public or private children services agency to file a motion for permanent custody of a child previously adjudicated abused, neglected and/or dependent and who is in the agency's temporary custody.
At a hearing on the motion, the agency must offer clear and convincing evidence to establish that one or more of the conditions listed in R.C. 2151.414(E) exists as to each of the child's parents. If, after considering all the relevant evidence, the court determines that one or more of the conditions listed in R.C. 2151.414(E) exists, the court can and must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents. Finally, under R.C.2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to that case. A nonexclusive list of factors relevant to the best interest of the child is found in R.C. 2151.414(D)[3].
Only if these requisites are supported by clear and convincing evidence can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996), 75 Ohio St.3d 95. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
The two conditions cited by the trial court as existing in this case are R.C. 2151.414 (E)(1) and (4). The condition in R.C. 2151.414(E)(1) exists if:
 "Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
The existence of the condition in R.C. 2151.414(E)(4) is established by showing that the parent "has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."
The record of this case shows that LCCS received referrals concerning appellant's care of her children as early as 1991. Cases were opened for all of appellant's children in 1994. The children were removed from appellant's home in December 1995, returned to the home for a brief period under protective supervision, and removed again in January 1996. Long term conditions causing the children's removal were allegations of extremely unsanitary housing conditions, behavioral and developmental problems with the children, lack of supervision and allowing the children to have contact with a convicted sex offender.
After removal from the home, LCCS discovered that all four children had "special needs" consisting of behavioral problems, physical problems or developmental delays or a combination of these three. For example, Jessica had severe tooth decay, was aggressive and combatant, engaged in sexual "acting out" and was two years behind in her grade level at school. Eventually, Jessica was placed in a therapeutic foster home where her problems gradually improved. Justin also engaged in sexual acting out and violent behavior; he was also diagnosed as being developmentally delayed. With counseling, special classes and the strict routine provided by his foster parents, Justin was also showing an improvement.
Julie was placed in a therapeutic foster home due to severe speech delays. She attends a special needs pre-school, is in speech therapy and is in counseling for her aggressive behavior and for her sexual acting out. Shortly after LCCS obtained temporary custody of Julie, tubes were placed in her ears due to repeated ear infections. Finally, Jordan, at the age of eight months, could not sit up by herself and was under the fifth percentile for her age group in height and weight. She has developmental delays in all areas. A medical assessment failed to reveal any physical basis for these delays. Only recently did Jordan smile or speak, and only then, in her foster home.
Testimony at the hearing on this matter disclosed that all of the children required special classes and/or therapy, that their foster parents actively participated in this process and that each child was better, physically and emotionally, in a structured environment.
After the children were removed from her home, case plans were formulated for appellant, her children and their putative fathers for the next several months. Services offered to appellant were case management services, individual counseling and parenting classes. Sharon Lamb, a pediatric nurse practitioner, taught the parenting classes, which involved both appellant and Jordan. She stated that even though appellant attended eighty percent of the classes, appellant was very self-oriented and had tunnel vision, that is, she was not open to new information. For example, appellant failed to recognize that Jordan has special needs. Instead, she believed that Jordan was a "late bloomer." Appellant also allowed her oldest son to stop taking prescribed medication because she had done so herself. Finally, the evidence showed that appellant could not understand why Justin, who has developmental delays, could not enter kindergarten when he reached the age of five. After a year and one-half of working with appellant, Lamb testified that she saw no change in appellant's parenting behavior. Lamb concluded:
 "I would sure hate to make that decision [concerning permanent custody]. * * * I see a lot of strengths. I see a lot of positives with [appellant]. I think she has a lot of skills. I think she cares about Jordan a great deal.
 "I do continue to have concern over [appellant's] understanding of the need for consistent care, especially related to special needs and her ability to handle and maintain that structure and that supervision, level of supervision, given a real unstructured world out there."
Appellant's caseworker, Betty Roessler, stated that appellant regularly exercised her right to visit her children, that appellant is employed and that appellant has different housing than she did previously. Roessler noted, however, that appellant is living with a man and that the home needs some work. Her testimony showed that while appellant was fairly consistent in visiting her children, she had problems controlling Jessica, who would hit her much younger brother, Justin. The caseworker recommended that LCCS be awarded permanent custody of appellant's children because of appellant's lack of insight after many months of counseling and her inability to follow through in dealing with the continued special needs of all four children.
Suzanne Smitley, Ph.D., a clinical psychologist, testified that, at the request of LCCS, she evaluated appellant's psychological functioning. She concluded, from test results and an interview, that appellant has difficulty separating her needs from those of her children. In the psychologist's opinion, appellant would have a "very difficult" time meeting the special needs of her children because she would feel uncomfortable interacting with them and might have difficulty identifying those needs.
Although appellant's individual counselors felt that she had made real progress, they based their opinions on appellant's reports to them and were unaware of the extent of the children's special needs. Ethyl Allman, who counseled appellant and her daughter, Jessica, together testified that appellant is a "nontraditional" mother, not caring as much about housekeeping or education as the "traditional" mother. She agreed, however, that children require a degree of supervision, even in a nontraditional home.
Based on the foregoing, we find that clear and convincing evidence was offered to show that appellant, despite utilization of offered services, was unable to remedy all of the conditions that caused the removal of her children from her home. In particular, Justin, Julie and Jordan have special physical, behavioral and developmental needs that appellant failed to recognize; she is unable to provide the structure necessary to deal with these needs, at least at any time in the near future.
Finding that the court's judgment as to the existence of one of the conditions in R.C. 2151.414(E) is supported by clear and convincing evidence, we need not address the issue of whether clear and convincing evidence was offered to support a determination that the condition listed in R.C.2151.414(E)(4)[4] existed. Appellant's second assignment, of error is found not well-taken.
In her third assignment of error, appellant argues that appellee failed to demonstrate that it made "good faith" efforts in implementing her case plans so that she could be reunified with her children, thereby violating her due process rights.
The applicable standard provides that LCCS was required to exercise reasonable case planning and to make diligent efforts to remedy the problems that initially caused the child to be placed outside the home. See In re Noe (July 21, 1997), Butler App. Nos. CA96-10-217, CA96-11-224, unreported; In re Marshall
(July 12, 1996), Geauga App. No. 95-G-1934, unreported; In re:Brittany and Marcus B. (Jan. 12, 1996), Wood App. No. WD-95-002, unreported;. In re McKenzie, (Oct. 18, 1995), Wayne App. No. 95CA0015, unreported); In re Watkins (Aug. 30, 1995), Summit App. No. 17068, unreported. The "good faith" requirement was eliminated from R.C. Chapter 2151.414(A) when the statute was amended effective January 1, 1989. In re: Brittany andMarcus B., supra; In re: Watkins, supra.
Appellant argues, however, that the Twelfth District Court of Appeals determined that a children services agency must demonstrate that it made a good faith effort to implement a reunification plan. See In re Weaver (1992), 79 Ohio App.3d 59. Even though Weaver was instituted after January 1, 1989, we do not find this case persuasive. The Weaver court does not mention the statute or any modifications of that statute. Instead, the Butler County Court of Appeals simply applied the good faith standard. Id. at 64. Moreover, the Butler County Court of Appeals expressly overruled its holding in Weaver, finding that, pursuant to the statute, the appropriate inquiry is whether the agency made reasonable efforts to implement its reunification plan. In re Lacy (July 18, 1994), Butler App. No. CA93-06-101, unreported.
Applying the appropriate standard to this case, the record reveals appellee, for twenty-two months, engaged in reasonable case planning and made reasonable efforts to help appellant remedy the conditions that caused the children's removal from the home. Thus, appellant's third assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J. ---------------------------- JUDGE James R. Sherck, J. ---------------------------- JUDGE Richard W. Knepper, J. CONCUR. ---------------------------- JUDGE
[1] Although notified, none of the putative fathers of the children appeared in the proceedings below. One of the fathers, however, was represented by an attorney during the dispositional hearing. He did not, nonetheless, seek custody of either of his two children.
[2] Appellant had another child, James, in July 1996. James is in the legal custody of his natural father.
[3] These factors are:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
[4] Presumably, the court's judgment indicates that this condition exists as to the fathers of these children. Clear and convincing evidence was offered to show that these fathers were unwilling to provide an adequate home for their child/children.